STATE OF NEBRASKA, APPELLEE, v. JOHN W. TRAMBLE, APPELLANT.

191 N. W. 2d 822

Filed November 24, 1971.   No. 38026.

Frank B. Morrison and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold S. Salter, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The defendant appeals from a conviction for robbery. The assignments of error relate to pretrial photographic identification of the defendant by the complaining witness.

The record shows that at about 3 a.m., on July 17, 1970, Earl Clare Williams was driving south on Twenty-fourth Street in Omaha, Nebraska, when his car was "curbed" by another automobile. One man reached through the window and grabbed Williams by the collar while the defendant entered the Williams automobile through the right front door and demanded that Williams give the defendant his money, watch, and ring. A third man, carrying a gun, approached the Williams automobile from the rear. After Williams had handed his money, watch, and ring to the defendant, he was told to drive on. He then drove to the police station and reported the robbery.

Williams testified that the defendant was in his automobile for about 3 minutes; that the area was lighted by street lights; that the defendant was a "colored fellow," about 6 feet tall; and that he had a thin face, a goatee with sideburns, and was graying at the temples. At the trial Williams identified the defendant as the man who had entered his automobile and robbed him.

At the pretrial hearing, Williams testified that on the

night of the robbery he was shown about 30 photographs at the police station but did not identify any of them as being a picture of the defendant, the man who had robbed him.

The ring was pawned by the defendant on July 20, 1970, using the alias of "Ted Williams." On July 22, 1970, Earl Clare Williams went to the pawn shop and identified the ring as the one that had been taken from him in the robbery. On the same day he looked at a number of photographs at the police station. He was unable to identify any of them as being a photograph of the defendant. There was one picture that resembled the defendant but the person in the photograph appeared to be younger and heavier than the defendant and was clean shaven. There is some confusion in the record as to this latter photograph but, apparently, it was a photograph of the defendant made in 1961.

The defendant was arrested on the afternoon of July 22, 1970, and placed in a police cruiser. Later, the watch that had been taken from Williams in the robbery was found underneath the seat cushion of the police cruiser in which the defendant had been placed at the time of the arrest.

On July 23, 1970, Williams was notified by the police that "they had the man" and Williams was asked to come to the police station to identify him. When Williams arrived at the station he was advised that the prisoner would not consent to a lineup, and Williams was shown four black and white photographs. Out of this group, Williams correctly identified one photograph as being a picture of the defendant. Williams was then shown a group of five colored photographs. Out of the second group, Williams correctly identified two photographs as being pictures of the defendant.

The defendant contends that the photographic identification procedure followed in this case was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. The question must be determined by an evaluation of all the surrounding cir-

cumstances. Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247.

On the first two occasions when photographs were shown to Williams at the police station, the defendant was not in custody. On the third occasion the defendant had refused to participate in a lineup and his refusal stands undenied in the record. Under such circumstances there is no alternative to photographic identification.

The record does not sustain the defendant's contention that the procedure followed was impermissibly suggestive. The photographs which were used on the third occasion were pictures of negro men of reasonably similar appearance. By separating the photographs into two groups, the police lessened the likelihood of misidentification. The photographs were in no particular order within each group, and the top photograph in each group was not a photograph of the defendant.

The defendant's other contention in regard to a right to counsel at the time of a photographic identification was considered and rejected in State v. Moss, *ante* p. 391, 191 N. W. 2d 543. See, also, United States v. Richmond, 449 F. 2d 288 (8th Cir., October 4, 1971).

The judgment of the district court is affirmed.

AFFIRMED.