STATE OF NEBRASKA, APPELLEE, V. ALEX PAUL DOMINGUS, APPELLANT.

450 N.W.2d 668

Filed January 26, 1990.   No. 88-698.

Patrick B. Hays for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from an order of the district court for Lincoln County denying defendant's motion for postconviction relief. Defendant, Alex Paul Domingus, has timely appealed to this court, assigning as error the district court's failure to find defendant's plea of no contest was not voluntary because it was entered without effective assistance of counsel.

The record shows that following a preliminary hearing, defendant was arraigned in the district court for Lincoln County on the charges of first degree murder in the May 2, 1986, killing of Ruth Anderson Keeney, use of a deadly weapon in the commission of a felony, and being a habitual criminal. Defendant entered pleas of not guilty to the charges.

The record further shows that a plea agreement was eventually negotiated between defendant and the State. Pursuant to the plea agreement, defendant agreed to plead no contest to the charges of first degree murder and use of a deadly weapon in the commission of a felony. In exchange for the pleas, the State agreed to dismiss the habitual criminal charge and further agreed that the State would not adduce any evidence under Neb. Rev. Stat. §§ 29-2520 to 29-2524 (Reissue 1989) at the sentencing hearing following defendant's plea to first degree murder. The State's agreement not to adduce such testimony substantially reduced defendant's chances of receiving the death penalty for the crime.

At his rearraignment on October 3, 1986, defendant withdrew his pleas of not guilty and pled no contest to the charges of first degree murder and use of a deadly weapon in the commission of a felony. The State dismissed the charge of being a habitual criminal. Before accepting defendant's pleas, the court reviewed with defendant the elements of the crime charged in each count and the respective penalties for those crimes, as well as defendant's constitutional rights. As a factual basis for the pleas, the State offered a portion of a police report, a supplemental police report, a written statement signed by a Rudy Rivera, and the bill of exceptions of the preliminary

hearing. The court subsequently accepted the pleas after finding that defendant had been fully advised of and understood his constitutional rights, that there was a factual basis for the pleas, and that the pleas had been freely and voluntarily made by the defendant. The arraignment complied completely with the requirements set out in *State v. Tully*, 226 Neb. 651, 413 N.W.2d 910 (1987).

On November 10, 1986, a sentencing hearing was held, pursuant to § 29-2521, before a single judge of the district court. At the hearing, in satisfaction of its agreement, the State did not offer any evidence. A presentence investigation had been prepared and had been examined by defendant and submitted to the court. The trial court sentenced defendant to consecutive terms of life imprisonment on the first degree murder charge and $6^2/_3$ to 20 years on the deadly weapons charge. The convictions were affirmed on appeal. *State v. Domingus*, 225 Neb. xix (case No. 86-999, May 13, 1987).

On February 4, 1988, defendant filed a pro se "Motion To Vacate Sentence," treated by the trial court as a motion for postconviction relief. The trial court reviewed the complete record of the case and, without hearing, denied five of the eight paragraphs seeking relief. No appeal is taken from that denial. Counsel was appointed, and an evidentiary hearing was held on the other three paragraphs of the motion. These paragraphs, taken as a whole, alleged that trial counsel was ineffective and that as a result, defendant's pleas of guilty were not voluntary. After hearing, the trial court denied defendant's motion for postconviction relief. Defendant timely appealed.

Defendant has the burden of demonstrating ineffective assistance of counsel, and the record must affirmatively support that claim. *State v. Wiley*, 232 Neb. 642, 441 N.W.2d 629 (1989).

"When, in a postconviction motion, a defendant alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as an attorney with ordinary training and skill in the criminal law in the area. Further, there must be a

showing of how the defendant was prejudiced in the defense of his or her case as a result of the attorney's actions or inactions."

*State v. Meis*, 233 Neb. 355, 360, 445 N.W.2d 610, 614 (1989) (quoting *State v. Patterson*, 232 Neb. 304, 440 N.W.2d 242 (1989)). A defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nearhood*, 233 Neb. 767, 448 N.W.2d 399 (1989); *State v. Bostwick*, 233 Neb. 57, 443 N.W.2d 885 (1989); *Johnson v. Mabry*, 752 F.2d 313 (8th Cir. 1985).

In an evidentiary hearing for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including the credibility and weight to be given the testimony of a witness, and the trial court's findings will be upheld unless the findings are clearly erroneous.

*State v. Marshall*, 233 Neb. 567, 573, 446 N.W.2d 733, 737 (1989).

Controverted testimony on the effectiveness of defendant's original counsel, Kent E. Florom, was presented at the evidentiary hearing held July 22, 1988. Defendant, who was first to testify, reiterated some of the allegations contained in his motion to vacate his sentence. Defendant testified that he was visited by defense counsel "twice or three times" at the Lincoln County jail, that counsel failed to review his case with him, and that defense counsel coerced defendant into entering the pleas.

With regard to the number of consultations between defendant and his trial counsel, the record shows the following on the cross-examination of defendant:

Q [by county attorney] Mr. Domingus, how many times did Mr. Florom [defense counsel] come up to see you?

. . . .

A [by defendant] It may have been twice or three times.

Q If I told you it was 17 times, would you say that would be true or false?

A That's a damed [sic] lie.

Q So if I had jail records that indicated Mr. Florom was

up to see you 17 times, that would be — in your own words — "a damed [sic] lie"?

A That's right.

Jail records introduced at the evidentiary hearing showed at least 13 consultations at the jail between defendant and his counsel, as well as several telephone calls. The trial court found that Florom "visited with the defendant on 17 occasions at the Lincoln County Jail . . . ." Defendant's testimony to the contrary was typical of his unfounded charges throughout this proceeding.

The deputy county attorney who tried the case testified that he had many opportunities to observe counsel's performance in the Domingus case and that, in his opinion, counsel provided excellent representation. Florom testified that he had tried four capital cases before representing defendant in this case; that he had spent more than 100 hours investigating the case against defendant; and that he had visited the scene of the murder five times, including one visit at 1 a.m., which was the approximate time of the murder. He also cross-examined each of the eight prosecution witnesses at the preliminary hearing and interviewed other witnesses. He further testified that he reviewed the entire case with defendant and informed him of the State's position and that he asked defendant "to let [counsel] do something that would keep him [defendant] alive." The court considered the testimony concerning the representation provided by counsel and found that his original counsel "did act effectively, properly and did exert his utmost efforts in representation of the defendant in this case." The evidence fully supports that finding.

The gravamen of defendant's argument that his pleas were not freely and voluntarily entered because counsel coerced him into negotiating the pleas is set out in paragraph 5 of his motion. Defendant maintains that counsel coerced him into negotiating the pleas by threatening that "he [defendant] would surly [sic] die if he did not enter a plea in this case." While, as set out above, counsel does not deny that he advised defendant to negotiate the pleas in order to remain alive, he does deny that there was any coercion involved in the pleas.

A plea will be found to be freely and voluntarily entered

upon the advice of counsel if that advice is within the range of competence demanded of attorneys in criminal cases. *Strickland, supra.* The record contains overwhelming proof of defendant's guilt and evidence warranting a death penalty had the case proceeded to trial. The record contains pictures of the victim showing she had been severely beaten and testimony stating the victim was beaten, while alive, with a blunt object in the face and head, causing extensive fracturing leading to her death. Evidence of injuries and bruising on her forearms showed that she had struggled before she died. After reviewing the presentence report, the trial court observed at the sentencing hearing that the defendant received a "substantial concession" under the plea agreement which prevented a recommendation of a death penalty. The record shows that no coercion existed in the plea negotiations and that defendant's trial counsel did not coerce defendant. The record shows that defendant's counsel acted competently in advising defendant as he did to accept the State's offer and enter pleas of no contest.

Defendant also contends that counsel was inadequate in his pretrial investigation of the facts which formed the basis of defendant's pleas. On this point, defendant first alleges that his counsel failed to contact Lee Ann Cooper, who was defendant's girlfriend prior to his incarceration. Cooper provided a statement to the police in an effort to exculpate the defendant of the crime.

Defendant's contention is not supported by the record. Not only did defendant's trial counsel interview Cooper about the statement defendant requested, but Cooper recanted her statement before defendant entered his pleas.

Next, defendant contends that counsel failed to interview a key witness, Rudy Rivera, a 17-year-old nephew of defendant. Defendant contends that Rivera's statement, given to the police 2 days before defendant changed his pleas, was the ultimate inducement for defendant to negotiate the pleas. The essence of defendant's contention is that he based his decision to negotiate the pleas on the information contained in the Rivera statement, but since counsel failed to investigate the statement, counsel's conduct fell below the minimum standard required of attorneys, as set forth in *Ford v. Parratt*, 638 F.2d 1115 (8th Cir.

1981), *vacated on other grounds* 454 U.S. 934, 102 S. Ct. 467, 70 L. Ed. 2d 242.

Defendant would have us adopt a per se rule that if a defendant's counsel does not take the statement of a witness furnishing damaging evidence to the prosecution, that counsel is ineffective as a matter of law. Such is not the law. The *Ford* case states that the duty to obtain the specifics of certain unsubstantiated facts arises conditionally, that is, the issue must be "deemed by both counsel and client to be significant enough to trigger the decision to plead . . . ." 638 F.2d at 1118. In this case the record shows that counsel was not ineffective in not pursuing the Rivera matter, because the statement was cumulative and not significant enough in itself to trigger a decision to plead or not to plead. See, also, *Johnson v. Mabry*, 752 F.2d 313 (8th Cir. 1985).

With regard to the Rivera statement, the record shows that 2 days before defendant entered his pleas, Rivera gave the police a signed statement that defendant had admitted to Rivera that "he [defendant] had killed someone" whose name was "Ruth." Defendant, on the other hand, testified at the hearing that Rivera misunderstood him, that he only told Rivera that he, the defendant, was "involved in a murder."

Rivera also admitted in his statement to the police that he had assisted defendant in burying a sack which Rivera stated contained clothes. Such evidence was cumulative and only corroborated earlier evidence that defendant had been seen with Rivera at the same location burying "something."

" 'In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. . . .' " *Burger v. Kemp*, 483 U.S. 776, 795, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). See, also, *State v. Painter*, 229 Neb. 278, 426 N.W.2d 513 (1988). In light of the evidence before us, defendant has demonstrated neither that his attorney's investigating strategy reflected unreasonable professional judgment nor that his attorney failed to perform at least as well as an attorney with ordinary training and skill in the criminal law in the area.

Assuming arguendo, in retrospect, that counsel should have pursued the Rivera matter, such error would not automatically mandate the setting aside of defendant's convictions based on ineffective representation. Defendant must also demonstrate, in addition to establishing counsel's deficiency, that such error constitutes prejudice. See, *Strickland, supra*; *State v. Nearhood*, 233 Neb. 767, 448 N.W.2d 399 (1989). "In order to satisfy the prejudice requirement in the context of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled and would have insisted upon going to trial." *State v. Wakeman*, 231 Neb. 66, 72, 434 N.W.2d 549, 554 (1989).

Although defendant contends Rivera's statement was a key factor triggering his guilty pleas, the record contains other compelling evidence substantiating defendant's guilt. Defendant himself admitted that he buried the sack containing his clothes and that he was "involved in a murder." Another witness, Tammy Lynn Chisam, testified at the preliminary hearing that defendant visited her at her home in the early hours on the morning of the victim's death and used her shower. She testified that she saw blood on defendant's hands and clothes and that after defendant showered, he admitted to her that "he thought he had just killed someone." A third witness, Carmen Moreno, provided additional testimony corroborating much of the evidence of defendant's guilt. Moreno testified that she saw the victim and defendant arguing prior to and not far from where the victim's body was found. Insofar as defendant contends that he based his pleas on the information contained in Rivera's statement, we find that such statement simply provided cumulative evidence of defendant's guilt.

In conclusion, it is clear that at the time defendant entered into the plea agreement, his counsel had investigated the case thoroughly and knew of overwhelming information regarding the death of the victim and defendant's guilt. These facts were furnished to defendant and provided a knowledgeable basis upon which defendant could intelligently formulate the pleas. Defendant has failed to cite any fact that counsel should have revealed to him at the time of the pleas that would have made going to trial a more appealing alternative. Absent some proof,

we cannot hold that a further investigation would have led to the discovery of other facts which, in turn, would have resulted in an informed decision on defendant's part to go to trial, rather than to negotiate the pleas.

In argument to this court, defendant's appellate counsel stated that the county attorney at some time extended and then withdrew an offer allowing the defendant to plead to second degree murder and that the withdrawal was based on the information received from Rivera. In his brief, the contention is made, somewhat more ambiguously, that after the Rivera statement, "the County Attorney was no longer considering allowing the Appellant to plead to 'Second Degree Murder' . . . ." Brief for appellant at 3-4. The bill of exceptions shows there had been some discussion about a plea to second degree murder, and defendant's counsel testified that he was getting close to obtaining such a plea. We have carefully examined the record and are unable to locate any evidence of an actual offer by the State to agree that defendant could plead to second degree murder. The facts in this regard do not support defendant's contention.

Defendant has failed to demonstrate that he is entitled to relief on any of the allegations raised in his motion for postconviction relief. The judgment of the district court is affirmed.

AFFIRMED.