STATE OF NEBRASKA, APPELLEE, V. JEFFERY GARCIA, APPELLANT.

453 N.W.2d 469

Filed April 6, 1990.    No. 89-725.

Jerry J. Milner, of Milner Law Office, P.C., for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.
Objecting to police identification procedures and the exclusion of good character evidence, the defendant, Jeffery Garcia, appeals his Hall County District Court jury conviction for robbery. We affirm.

At 12:30 a.m. on July 24, 1988, Velma Mosley, now known as Velma Watkins, left her place of employment in Grand Island and began walking home. When Watkins noticed three young men in a parking lot, she crossed the street. As Watkins continued walking, she sensed that the men were following her. One of the men approached Watkins from her left side and the two faced one another at an arm's-length distance. Watkins testified that the man was of Mexican descent, was wearing white slacks, and was shirtless. At this time, Watkins and the man noticed two other men, later determined to be Jay Otto and Michael McClaren. The man near Watkins returned to his companions. Otto and McClaren remained seated on the sidewalk by a funeral home and continued talking to two women in a parked car. The area was illuminated by signs around the funeral home and by a corner streetlight.

After facing the Hispanic man, Watkins began walking down the middle of the street. As she passed Otto and McClaren, they asked Watkins if she wanted a ride. She declined and assured them that she was all right. As the three men following Watkins approached Otto and McClaren, they told the pair to get off the sidewalk. When the men walked by Otto and McClaren, the last of the trio patted McClaren on the head.

Approximately one-half block later, the man in white pants grabbed the strap of Watkins' purse. Watkins made eye contact with her assailant. The strap broke away from the purse, and Watkins' assailants began to run. Realizing that they did not have the purse, the men returned, knocked Watkins to the ground, stepped on her neck, and wrestled the purse from her. Watkins went to a nearby bar, where she reported the robbery.

As Sgt. Kerry Cole of the Grand Island Police Department was leaving the police station parking lot shortly before 2 a.m. on July 24, he observed four males running down the middle of Division Street, near its intersection with Walnut Street. Watkins' stolen purse was later found behind a house located on the southeast corner of Division and Walnut. Cole gave chase and was finally able to detain one of the men. Sergeant Cole described the man as a shirtless Hispanic male with a mustache, wearing light-colored jeans. The detainee was identified as Jeffery Garcia, the defendant. After briefly

questioning him, Cole released Garcia.

At approximately 2:01 a.m., Michael Tremain, a Grand Island police officer, was dispatched to the bar to speak with Watkins. Upon his arrival at the bar, Watkins informed Officer Tremain of the robbery and gave a description of her assailants. Tremain conveyed this information by radio to other officers.

When he received the information that three Hispanic males had perpetrated a robbery and that one was shirtless and wearing white jeans, Sergeant Cole began searching for Garcia. Cole located Garcia in the company of Victor Deras at the intersection of Sycamore and Charles Streets, and had them come to his cruiser. Upon receipt of Sergeant Cole's radio dispatch that he had located suspects, Officer Tremain drove Watkins to the intersection of Sycamore and Charles, where the two men were being detained by Sergeant Cole. From Officer Tremain's cruiser, which was parked across the street from the two suspects, Watkins identified both men as being involved in the robbery. Thereupon, Garcia and Deras were placed under arrest for the crime of robbery.

On July 27, two six-man photographic arrays were shown to Otto. The array containing Garcia's photo consisted of separate photos of the upper torsos and faces of six individuals. Otto identified Garcia in one array and Deras in the other array as two of the men who were following Watkins on the morning of July 24. Neither Garcia nor Deras was pictured in both photographic arrays.

Although he did not testify at the defendant's trial, McClaren's deposition which was introduced at the suppression hearing reflects that McClaren, when shown the two photographic arrays, also identified Garcia and Deras as two of the men who were following Watkins just before she was robbed. McClaren made his identification on July 26. When Grand Island Police Det. Michael Salak showed the photographic arrays to Otto and McClaren, he cautioned each of them not to make an identification unless they were absolutely certain. Salak did, however, advise both witnesses that each array contained a photo of a suspect in the Watkins robbery. As will be discussed later, this comment is not fatal to a reliable identification.

After an evidentiary hearing, Garcia's motion to suppress identification of the defendant by the testimony of Watkins, Otto, and McClaren was denied. At trial, the court overruled Garcia's renewed motions to suppress in-court identifications of the defendant by Watkins and Otto. Both Watkins and Otto made in-court identifications of Garcia.

During the defendant's trial, defense counsel asked Garcia if he had ever been convicted of a felony, and his reply that he had not been was stricken upon the State's objection.

The jury found Garcia guilty of violating Neb. Rev. Stat. § 28-324(1) (Reissue 1989), which provides: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." The district court sentenced Garcia to a term of imprisonment of not less than 15 nor more than 30 months, with credit for time served.

While Garcia alleges four assignments of error, the only claimed errors discussed in his brief are (1) the trial court's failure to suppress identification testimony and (2) the exclusion of evidence of Garcia's good character. The Supreme Court will consider only those errors which are assigned and discussed in Garcia's brief. See, *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989); *Wells Fargo Ag Credit Corp. v. Batterman*, 229 Neb. 15, 424 N.W.2d 870 (1988).

It is Garcia's position that the showup conducted at the intersection of Sycamore and Charles violated his due process rights and that, therefore, Watkins' in-court identification should have been suppressed.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989). In making this determination, this court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed witnesses testifying in regard to such motions. *Id.*

A showup is usually defined as a one-on-one confrontation where the witness views only the suspect, and it is commonly conducted at the scene of the crime, shortly after the arrest or detention of a suspect and while the incident is still fresh in the witness' mind. *State v. Richard*, 228 Neb. 872, 424 N.W.2d 859 (1988). An identification procedure is constitutionally invalid only when it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law. *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989). The initial inquiry is whether an identification procedure was suggestive. See, *State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986), *overruled on other grounds, State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987); *State v. Tramble*, 187 Neb. 488, 191 N.W.2d 822 (1971); *Salam v. Lockhart*, 874 F.2d 525 (8th Cir. 1989), *cert. denied* ____ U.S. ____, 110 S. Ct. 252, 107 L. Ed. 2d 202; *State v. Collette*, 199 Conn. 308, 507 A.2d 99 (1986); *State v. Vaughn*, 101 Wash. 2d 604, 682 P.2d 878 (1984); 1 W. LaFave & J. Israel, Criminal Procedure § 7.4 (West 1984). A determination of impermissible suggestiveness is based on the totality of the circumstances. *Swoopes, supra.* If an identification procedure is suggestive, then it must be determined whether the in-court identification was nonetheless reliable based on the totality of the circumstances. *Richard, supra*; *Vaughn, supra*; *Collette, supra.* In determining reliability, the factors to be considered are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989).

Standing alone, Watkins' viewing of Garcia in a showup shortly after the occurrence of the crime does not violate due process. See, *Robinson, supra*; *Wickline, supra*; *State v. Johnson*, 214 Neb. 869, 336 N.W.2d 581 (1983); *Johnson v. Dugger*, 817 F.2d 726 (11th Cir. 1987); *Collette, supra.* Based upon the totality of the circumstances, the record establishes that Watkins' in-court identification of Garcia as the robber was reliable. On the morning the robbery occurred, Watkins

came face-to-face with Garcia on two occasions. Although it was night, lighting was provided by a streetlight and a business establishment's lighted signs. Watkins' degree of attention was high in view of the fact that she was alone and aware of being followed by three men in the early morning hours. Watkins' description substantially described Garcia, who was without a shirt and wearing light-colored pants. Although Watkins failed to notice that Garcia had a mustache on the morning in question, that is not significant in light of all the circumstances. See *State v. Johnson, supra* (determining that although there were some discrepancies between the witness' initial description and the defendant's actual appearance, the record still established an adequate basis for identification by the witness). While Watkins testified that it was possible that she did not have a clear view of Garcia at the showup, at the time of the showup Watkins asserted in unequivocal terms that both Deras and Garcia were involved in robbing her. The time lapse between the robbery and the showup was relatively short. The trial court's finding that Watkins' in-court identification of Garcia as one of the robbers was reliable is not clearly erroneous. The showup was not so unnecessarily suggestive and conducive to an irreparably mistaken identification that Garcia was denied due process of law.

Garcia next contends that the manner in which the photographic arrays were shown to Otto violated the defendant's due process rights. Consequently, Garcia asserts that the district court should have suppressed Otto's in-court identification of Garcia as one of the men he observed following Watkins on the morning of July 24. The previously discussed rules regarding showups apply with equal force to the showing of photographic arrays. See, e.g., *State v. Sardeson,* 231 Neb. 586, 437 N.W.2d 473 (1989). Garcia has not directed our attention to the manner in which the array was allegedly suggestive. An examination of the photographs reflects that the array was not suggestive. Though Detective Salak advised Otto that a suspect was pictured in the photographic array, a police officer's comment that a lineup or photographic array contains a suspect or a suspect's picture does not render the identification procedure unduly suggestive inasmuch as a witness would

assume that to be the case. *State v. Swoopes,* 223 Neb. 914, 395 N.W.2d 500 (1986); *State v. Joseph,* 202 Neb. 268, 274 N.W.2d 880 (1979); *State v. Bolden,* 196 Neb. 388, 243 N.W.2d 162 (1976). The district court's finding that the photographic array was not so unnecessarily suggestive and conducive to an irreparably mistaken identification that Garcia was denied due process of law is not clearly erroneous. Thus, Garcia's argument that Otto's in-court identification should have been suppressed is meritless.

On direct examination by his counsel, Garcia testified that he had never been convicted of a felony. Upon the State's objection, Garcia's answer was stricken. The defendant contends that the trial court committed reversible error by striking this testimony.

The admission of character evidence is largely left to the discretion of the trial court and will not be overruled on appeal absent a showing of an abuse of discretion. *State v. Nesbitt,* 226 Neb. 32, 409 N.W.2d 314 (1987). Garcia's testimony that he had no prior felony convictions was an attempt to introduce evidence of general character or reputation. On direct examination, a defendant's testimony that he or she has never been convicted of a crime is inadmissible. See, *Hendricks v. State,* 281 Ala. 376, 202 So. 2d 738 (1967); *Wrobel v. State,* 410 So. 2d 950 (Fla. App. 1982), *review denied* 419 So. 2d 1201; *State v. Bedker,* 149 Wis. 2d 257, 440 N.W.2d 802 (1989), *review denied* 149 Wis. 2d lvi, 443 N.W.2d 312. Since Garcia's testimony that he had never been convicted of a felony was evidence of his general character or reputation, the district court did not abuse its discretion in striking this testimony.

The defendant's conviction and sentence are affirmed.

AFFIRMED.