STATE OF NEBRASKA, APPELLEE, V. DUANE W. SANDERS,
APPELLANT.
455 N.W.2d 108

Filed May 4, 1990.   No. 44019.

184

Mark S. Trustin, of Trustin, Schweer, Ferraro & Van Robays, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Duane W. Sanders, confessed perpetrator of the operational acts with which he was charged, appeals his jury convictions and resulting sentences for an execution-type attempt to commit second degree murder, for robbery, and for the use of a firearm in the commission of a felony.

The defendant was sentenced to consecutive prison terms of 16 to 50 years on the attempted murder charge, 16 to 50 years for robbery, and 6 to 10 years on the firearm charge. We affirm the convictions and sentences by the district court for Douglas County.

In his assignments of error as summarized, Sanders claims (1) that a lineup in which he was identified was overly suggestive and therefore violated his due process rights, (2) that he was denied effective assistance of counsel during the lineup, (3) that his trial counsel was ineffective, and (4) that his sentences are excessive.

This is Sanders' third appearance before the Supreme Court

on this matter. His convictions were affirmed on direct appeal. See *State v. Sanders*, 209 Neb. xx (case No. 44019, Sept. 9, 1981). The denial of the defendant's postconviction relief was also affirmed, in *State v. Sanders*, 220 Neb. 308, 369 N.W.2d 641 (1985).

Sanders' direct appeal was reinstated by this court after the U.S. District Court for the District of Nebraska conditionally granted habeas corpus relief unless a direct appeal was reinstated. Although this appeal is nominally a direct appeal, there is also a record from the postconviction hearing. In the interest of judicial economy, we consider both the trial and postconviction records. See *State v. Holton*, 216 Neb. 594, 344 N.W.2d 661 (1984).

On Thursday, July 24, 1980, at approximately 11 to 11:30 p.m., an adult male, subsequently identified by three eyewitnesses as the defendant, Sanders, entered the Nifty Bar in Omaha and approached a counter. He was dressed in dark clothes. When Barbara J. O'Kane, a waitress, approached Sanders, he asked for change for a quarter. Larry B. Robinson, a part owner and bartender on the night in question, observed the defendant speak with O'Kane. As O'Kane turned from the cash register, she noticed Sanders standing on his toes looking down into the cash register. Robinson also observed Sanders bending over the bar looking in the direction of the cash register. After O'Kane gave him change for his quarter, Sanders left. Thomas P. Hegarty, a customer who was drinking his second beer of the evening, also noticed O'Kane make change and Sanders leaning over the counter. Hegarty later remarked to O'Kane and Robinson that it was odd that someone would obtain "change for a quarter and [leave] without using the telephone or anything like that." Approximately 45 minutes later, O'Kane saw Sanders walk across a lighted parking lot. The lighting was sufficient for her to see that the defendant was wearing black pants and a black shirt with silver threads.

O'Kane left the bar at 1:15 a.m., leaving Robinson alone to finish cleaning the premises. Approximately 5 minutes after O'Kane departed, there was a knock on the windowpane of the bar's front door. Robinson looked through the window and saw Sanders, who asked Robinson to change a $10 bill. The area

where Sanders was standing was illuminated by a floodlight directly overhead. After obtaining money from the cash register, Robinson again looked through the window to ensure that Sanders still had a $10 bill and that his hands held nothing else.

As Robinson opened the door, Sanders forced his way into the bar and revealed a handgun, either a .38-caliber weapon or .357 Magnum. After a brief struggle in the doorway, Robinson was forced to lie facedown on the floor. The defendant robbed Robinson of his watch, ring, and a wallet. From his prone position, Robinson observed Sanders remove money from the cash register. The bar was robbed of about $1,100.

As he was leaving, Sanders instructed Robinson not to leave for 10 to 15 minutes. The defendant then said, "On second thought, you're not going anywhere." From a distance of a few inches, Sanders shot Robinson in the back of the head. Robinson survived the potentially fatal gunshot wound. Alerted by the gunshot, nearby neighbors observed a figure in dark clothing leave the vicinity of the bar.

On July 29, O'Kane and Hegarty gave descriptions to a police artist of the man whom they saw in the Nifty Bar on July 24 getting change for a quarter. The artist formed composite pictures that resembled Sanders. Additionally, O'Kane, Hegarty, and Robinson viewed numerous photographs but were unable to positively identify anyone.

While in custody of Omaha police on September 30, Sanders, after being advised of and waiving his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), was questioned about the Nifty Bar robbery by two police officers. Shortly after the interview began, Sanders asked to speak to Omaha Police Det. John R. Farmer. The detective, in response to the defendant's request, went to the interview room, where Sanders confessed that he had committed the robbery and shooting at the Nifty Bar. The defendant said that he was ashamed and had given the gun he used to a friend.

On the evening of September 30, O'Kane, Hegarty, and Robinson separately viewed a three-man lineup that included Sanders. O'Kane and Hegarty positively identified Sanders as

the man who had requested change for a quarter. Robinson instantly recognized Sanders as the man who shot him but, due to the traumatic event, was unable to verbalize to the police that Sanders was the perpetrator. After viewing the lineup, each witness was segregated from the other witnesses until all the witnesses had viewed the lineup.

Following a suppression hearing, the court found that the lineup was fair and not unduly suggestive or leading. The court further found that the defendant's confession to Officer Farmer was freely and voluntarily given after he was fully and fairly advised of his constitutional rights under *Miranda v. Arizona, supra,* and that Sanders made a knowing and intelligent waiver of those rights. Sanders has not raised any assignment of error regarding the admissibility of his confession or the sufficiency of the evidence to convict him.

At the suppression hearing and at trial, both O'Kane and Hegarty positively identified Sanders as the man who, on the evening of July 24, came into the Nifty Bar, obtained change for a quarter, looked over the counter at the cash register, and then left the tavern. Robinson, at both the suppression hearing and trial, positively identified Sanders as the man who talked with O'Kane, leaned over the counter and looked at the cash register, and left the Nifty Bar on the evening of July 24. Robinson also positively identified the defendant as the person who, after the bar was closed, sought change for a $10 bill, forced his way into the bar when Robinson opened the door, robbed Robinson and the tavern, and then shot Robinson.

## SUGGESTIVENESS OF LINEUP

In his first assignment of error, Sanders contends that the lineup was so unduly suggestive that it was inevitable that he would be identified as the person involved in the robbery and shooting. He concludes, therefore, that the witnesses' in-court identifications of Sanders as the perpetrator should have been suppressed.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Garcia, ante* p. 53, 453 N.W.2d 469

(1990). In making this determination, this court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed witnesses testifying in regard to such motions. *Id.*

As we held in *Garcia, supra* at 58, 453 N.W.2d at 473:

An identification procedure is constitutionally invalid only when it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law. *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989). The initial inquiry is whether an identification procedure was suggestive. *See, State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986), *overruled on other grounds*, *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987); *State v. Tramble*, 187 Neb. 488, 191 N.W.2d 822 (1971); *Salam v. Lockhart*, 874 F.2d 525 (8th Cir. 1989), *cert. denied* ____ U.S. ____, 110 S. Ct. 252, 107 L. Ed. 2d 202; *State v. Collette*, 199 Conn. 308, 507 A.2d 99 (1986); *State v. Vaughn*, 101 Wash. 2d 604, 682 P.2d 878 (1984); 1 W. LaFave & J. Israel, Criminal Procedure, § 7.4 (West 1984). A determination of impermissible suggestiveness is based on the totality of the circumstances. *Swoopes, supra.*

After a thorough review of the record, based upon the totality of the circumstances, we cannot say that the trial court was clearly wrong in finding that the lineup in which Sanders participated was not unnecessarily suggestive.

But even assuming arguendo that Sanders' lineup was unnecessarily suggestive, the in-court identifications nonetheless were reliable based upon the totality of the circumstances and therefore were admissible in evidence.

As we also held in *Garcia, supra* at 58, 453 N.W.2d at 473:

If an identification procedure is suggestive, then it must be determined whether the in-court identification was nonetheless reliable based on the totality of the circumstances. *Richard, supra*; *Vaughn, supra*; *Collette, supra.* In determining reliability, the factors to be considered are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of

attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989).

These same factors are applied to identifications by persons not actually witnessing the crime. See, *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989); *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989).

On the evening before the crime, Robinson, from a distance of between 15 and 20 feet, saw the defendant when he entered the Nifty Bar, ostensibly for change, and again when Sanders leaned over the counter while O'Kane was getting change. At that time, the bar was well lighted and it was not particularly busy, although the tables were all full. On the two occasions Robinson looked through the front door window when the defendant returned after closing, the two men were only 1 1/2 to 2 feet apart. At that time, there was a floodlight directly above the defendant. Robinson also viewed Sanders when he entered the bar, during a brief struggle, and when the defendant removed money from behind the bar. Significantly, the robbery occurred over a 3- to 4-minute period.

At times, O'Kane was only a foot from Sanders during the 3 to 5 minutes in which she made change. A short time later, the waitress also saw Sanders walk across an illuminated parking lot.

From a distance of 5 to 10 feet, Hegarty had an unobstructed view while the defendant was getting change from O'Kane. This witness periodically glanced at Sanders for about 1 1/2 to 2 minutes and watched the defendant lean over the bar.

On the first occasion that Sanders entered the bar, Robinson noticed him because he was unfamiliar and Robinson attempted to make new customers feel welcome. When the defendant, under the pretense of requiring change, returned to the Nifty Bar after it was closed, Robinson checked to ensure that Sanders had money and that he was unarmed. During the robbery, it can reasonably be inferred that Robinson's attention was heightened since his life was being threatened.

O'Kane focused on Sanders while she was making change.

Her attention was drawn to the defendant when he stood on his toes and looked down into the cash register.

Hegarty testified that he noticed the defendant because it was unusual for a person of Sanders' race to patronize the bar and because the defendant left without using the change which he had just requested.

The description given by Robinson to the police and the descriptions given by O'Kane and Hegarty for the composite drawings substantially matched Sanders.

Although Robinson could not identify Sanders at the lineup, he testified at the suppression hearing and at the trial that he instantly recognized his attacker at the lineup but was unable to articulate this because of the trauma. Both O'Kane and Hegarty immediately positively identified Sanders in the lineup. Neither displayed any doubt.

In view of all the circumstances, the length of time between the events at the bar on July 24 and 25 and the lineup on September 30 was not so long as to lead to a mistaken identification. See, *State v. Richard*, 228 Neb. 872, 424 N.W.2d 859 (1988) (involving 2 months between time of crime and confrontation); *State v. Packett*, 207 Neb. 202, 297 N.W.2d 762 (1980) (determining that lineup 2½ months after sexual assault was not unnecessarily suggestive or conducive to mistaken identification). Moreover, in Sanders' case, each of the witnesses testified that his or her in-court identification was based on his or her individual perceptions from the night of the crime.

We note that although there was evidence that the police indicated to two of the witnesses that the lineup would contain a suspect, this does not render the identification procedure unduly suggestive inasmuch as a witness would assume that to be the case. See *State v. Garcia, ante* p. 53, 453 N.W.2d 469 (1990).

The trial court's finding regarding the lineup is not clearly erroneous. Therefore, the lineup was not so unnecessarily suggestive and conducive to an irreparably mistaken identification that Sanders was denied due process of law.

## RIGHT TO COUNSEL AT LINEUP

In his second assignment of error, the defendant asserts that his right to have counsel present at the lineup was violated.

The right to counsel at a police lineup attaches only at or after the time when adversary judicial proceedings have been initiated against a defendant by way of complaint, indictment, or information. *State v. Evans*, 224 Neb. 64, 395 N.W.2d 563 (1986). See, also, *State v. Ellis*, 219 Neb. 408, 363 N.W.2d 389 (1985); *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). Language in *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989), *State v. Smith*, 209 Neb. 86, 306 N.W.2d 181 (1981), and *State v. Nance*, 197 Neb. 95, 246 N.W.2d 868 (1976), to the effect that "until an information has been filed, a defendant has no constitutional right to have the assistance of counsel during a police showup" is overly restrictive and is disapproved.

Sanders' lineup was conducted on September 30, 1980. No adversary judicial proceedings for the crimes of attempted second degree murder, robbery, and use of a firearm to commit a felony were initiated until October 9, 1980. Since Sanders' right to counsel had not attached at the time of the lineup, this assignment of error is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

To sustain a claim of ineffective assistance of counsel as a violation of the sixth amendment to the U.S. Constitution or article I, § 11, of the Nebraska Constitution, and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). A criminal defendant must demonstrate prejudice was suffered from ineffectiveness of counsel. *Id*. The defendant has the burden of demonstrating ineffective assistance of counsel, and the record must affirmatively support the claim. *State v. Domingus*, 234 Neb. 267, 450 N.W.2d 668 (1990). As noted in *State v. Hawthorne*, 230 Neb.

343, 347, 431 N.W.2d 630, 633 (1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)):

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed. . . . "

### Lineup

In his first contention regarding ineffective assistance of counsel, Sanders argues that although his trial counsel challenged the lineup at a suppression hearing, he did not attack the suggestiveness of the lineup. The basis for this claim is unclear. The record reflects that the court conducted a suppression hearing on the identification procedures and that the court found that the lineup was fair and not unduly suggestive and leading. At any rate, as has already been stated, the district court's finding to the effect that the lineup was not so unnecessarily suggestive and conducive to an irreparably mistaken identification that Sanders was denied due process of law is not clearly erroneous. Because the defendant has not demonstrated prejudice, this assignment of error is without merit.

### Jury Instruction on Lineup

In his second contention regarding ineffective assistance of counsel, Sanders argues that his counsel should have asked the court to instruct the jury that the eyewitness identification may have been tainted due to a suggestive lineup. If the eyewitness identification procedures were impermissibly suggestive, the identification is not admissible at the trial. The admissibility of relevant evidence is a matter within the trial court's discretion. *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989). When the trial court determines that an eyewitness identification is admissible, it is proper for a court to reject a defendant's proposed instruction which would have placed the issue of admissibility before the jury. See, *State v. McGee*, 52 Wis. 2d

736, 190 N.W.2d 893 (1971); *People v. Gordon*, 44 Colo. App. 266, 615 P.2d 62 (1980).

Although the court determines the admissibility of eyewitness identification, it is the jury's function to determine the credibility of the eyewitness. Sanders' jury was instructed on credibility, the State's burden of proof, and the substantive elements of the crimes involved. These instructions allowed the jury to properly evaluate the credibility of the witnesses' identification testimony. See, *McGee, supra*; *State v. Swink*, 620 S.W.2d 63 (Mo. App. 1981). Therefore, Sanders' attorney was not deficient in failing to request such a jury instruction.

### Lesser-Included Offense Jury Instruction

Under this assignment of error, Sanders contends that first or second degree assault is a lesser-included offense of second degree murder. Since his attorney did not request a jury instruction on assault in the first and second degree, the defendant argues that he was denied effective assistance of counsel.

Sanders was charged with and convicted of *attempted* second degree murder, not second degree murder. The initial question, then, is whether either first or second degree assault is a lesser-included offense of *attempted* second degree murder. Because one may be guilty of attempted second degree murder without causing injury to the intended victim and because first degree assault cannot be committed without causing serious bodily injury, this court has held that first degree assault is not a lesser-included offense of attempted second degree murder. See *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982). This rationale applies with equal force to second degree assault, which also requires bodily injury as an element of the offense. See Neb. Rev. Stat. § 28-309 (Reissue 1979). Because a lesser-included offense instruction on assault would have been improper in this case, defense counsel was not deficient in failing to request a first or second degree assault instruction.

### Failure to Challenge Absence of Counsel at Lineup

Sanders contends that since his constitutional rights were violated when he was not allowed representation at his lineup, his trial counsel's failure to challenge the lineup on that basis

denied him the effective assistance of counsel. There being no right to counsel at a lineup until a complaint, indictment, or information is filed, *State v. Evans*, 224 Neb. 64, 395 N.W.2d 563 (1986), *State v. Ellis*, 219 Neb. 408, 363 N.W.2d 389 (1985), and *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972), the defendant's trial counsel was not deficient in failing to contend that Sanders was denied effective assistance of counsel at the lineup.

### Failure to Investigate and Call a Witness

Sanders' sister, Millicent Johnson, testified at trial that Sanders was at her home from 9:45 p.m. on the 24th until at least 4 o'clock the following morning. The defendant claims that Fletcher Young would have corroborated his sister's testimony, which the jury may have suspected due to the familial relationship. At the postconviction hearing, Young testified that Sanders was at Johnson's home when Young left the home at 10 or 11 p.m. on July 24. Because his attorney never contacted, investigated, or called Young as a witness, Sanders contends that he was denied effective assistance of counsel.

Young's testimony does not provide Sanders with an alibi. Young may have seen the defendant at his sister's house at 10 or 11 p.m., but the perpetrator did not appear at the Nifty Bar until 11 to 11:30 p.m. Moreover, Sanders overlooks Officer Farmer's testimony that the defendant confessed to the crimes involved.

In view of Young's flawed alibi testimony and Sanders' confession, there is no reasonable probability that if Sanders' counsel had investigated, interrogated, and called Young as a witness, the results of Sanders' trial would have been different.

### Presentence Report Review

In his brief, Sanders claims that his counsel was ineffective because he failed to review the defendant's presentence report with him or on his behalf.

There is nothing in either the trial or postconviction records to indicate that Sanders' counsel failed to review the presentence report with Sanders or on his behalf. See *State v. Domingus*, 234 Neb. 267, 450 N.W.2d 668 (1990).

Even if Sanders' counsel did fail to review the presentence

report with the defendant or on his behalf, Sanders has not shown how he was prejudiced by this alleged deficiency in his counsel's performance. See *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). This assignment of error is meritless.

## EXCESSIVENESS OF SENTENCE

In his last assigned error, Sanders claims that because his sentences were dictated by inordinate emotion, the sentences were excessive and must be reduced. A sentence imposed within the statutory limits will not be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed. *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989). Attempted second degree murder is punishable by imprisonment for 1 to 50 years. See Neb. Rev. Stat. §§ 28-105 (Reissue 1979) and 28-201 and 28-304 (Reissue 1989). Robbery is also punishable by imprisonment for 1 to 50 years. See § 28-105 and Neb. Rev. Stat. § 28-324 (Reissue 1989). The penalty for use of a firearm in the commission of a felony includes imprisonment for 1 to 20 years; the sentence must run consecutively to the underlying felony sentence. See § 28-105 and Neb. Rev. Stat. § 28-1205 (Reissue 1989). Sanders was sentenced within these statutorily prescribed limits. Except for the mandatory consecutive firearm penalty, it is within the discretion of the trial court that sentences imposed for separate crimes be served consecutively rather than concurrently. *State v. Davis*, 200 Neb. 557, 264 N.W.2d 198 (1978). Considering that it was pure chance that Robinson survived an execution-style shooting from close quarters into the back of his skull, Sanders might well have been charged with a capital crime under slightly different circumstances. At sentencing, the trial court found there were no mitigating circumstances in the defendant's favor.

Because of the enormity and brutality of the crimes and Sanders' prior felony record, it cannot be said that the sentencing court abused its discretion.

The defendant's convictions and sentences are affirmed.

AFFIRMED.