STATE OF NEBRASKA, APPELLEE, V. KENNETH R. GROSS, APPELLANT.

408 N.W.2d 297

Filed June 26, 1987.   No. 86-883.

Kirk E. Naylor, Jr., for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from the district court for Otoe County. Appellant, Kenneth R. Gross, was charged with possession of a controlled substance in violation of Neb. Rev. Stat. § 28-416(3) (Reissue 1985). Gross was convicted and sentenced to 1 year in the Nebraska Penal and Correctional Complex. This appeal follows.

Prior to trial, defense counsel filed a motion to suppress any and all evidence seized as a result of the Nebraska State Patrol's search of the appellant's trailer. The motion alleged that the search of the vehicle was based on evidence discovered without a warrant, not pursuant to a valid arrest, and without consent or probable cause. The district court denied the appellant's motion to suppress, finding that probable cause existed for the patrol to search the vehicle. The motion was renewed at trial. The facts surrounding the search of the appellant's trailer are as follows.

Early in the morning of August 26, 1985, a resident of rural Otoe County made three phone calls to the Nebraska State Patrol reporting a suspicious vehicle on the road near the caller's farm. The first phone call was made around 7 a.m., reporting the vehicle parked at a nearby corner approximately 1 mile east of Douglas. The caller also stated that there was a marijuana field nearby. The second phone call was made after the caller learned that a rifleshot had been heard in the area earlier that morning. The caller later observed the vehicle move further east and again called the State Patrol after a patrol car was seen in the area where the appellant's vehicle was earlier parked.

The State Patrol proceeded to the area where the vehicle was reported to have been. There they observed a black pickup truck, with a black shell, pulling an off-white trailer. These vehicles matched the description given by the caller. The troopers could not see into the trailer as they pulled up and, as they approached the vehicles, observed the trailer swaying from side to side. The troopers proceeded to call out for the inhabitants of the trailer to come out, but no one appeared for a period of 2 to 3 minutes. Finally a man, identified as the appellant, emerged from the trailer. The appellant stated that he

had just left his girlfriend in Lincoln and was on his way to his father's farm to return the trailer.

The patrolmen next requested identification, and as the appellant turned around and went partially back into the trailer to retrieve his wallet, one of the patrolmen observed two clear glass vials, with black lids on them, containing a cloudy liquid with what appeared to be a white powdery substance suspended in the liquid. The patrolman picked up one of the vials to get a closer look and showed it to the other patrolman. One of the troopers testified that he felt the substance in the vials was of a drug nature. The troopers also observed some plastic cans with spouts on them. Gross was then asked to provide the vehicle's registration, which was located in the truck. While one patrolman went with the appellant, the other entered the trailer to secure it and make sure no one else was inside. While inside the trailer, the trooper saw what he thought were marijuana seeds and leaves on a couch. Investigators were called to the scene, and a warrant was later obtained to search the trailer, where an amount of cocaine was found.

On appeal appellant assigns as error that the trial court incorrectly overruled the appellant's motion to suppress the results of the search of his trailer pursuant to the search warrant. We affirm.

Our review of the disposition of a motion to suppress is limited to determining if the lower court's action was clearly erroneous. Where evidence is conflicting regarding a motion to suppress, decisions concerning evidence are left to the trial court and will not be overturned on appeal absent an abuse of discretion. *State v. Vrtiska, ante* p. 454, 406 N.W.2d 114 (1987); *State v. Chamley*, 223 Neb. 614, 391 N.W.2d 99 (1986).

The appellant argues that the search of his trailer was conducted without a valid warrant, not pursuant to a valid arrest, and without the presence of any of the exceptions to the warrant requirement. The appellant contends that the troopers had no probable cause to initially enter his trailer, and, therefore, the results of the search with a warrant obtained on the basis of what was discovered upon the officers' initial and allegedly illegal search must be suppressed. Gross also contends that the troopers could not have entered his trailer using the

plain view exception, as the substance observed in the vials was not immediately recognizable as being an illegal drug.

The investigatory stop is sanctioned by the laws of this State. Neb. Rev. Stat. § 29-829 (Reissue 1985) provides:

A peace officer may stop any person in a public place whom he reasonably suspects of committing, who has committed, or who is about to commit a crime and may demand of him his name, address and an explanation of his actions. When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects he is in danger of life or limb, he may search such person for a dangerous weapon. If the peace officer finds such a weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of questioning, at which time he shall either return it, if lawfully possessed, or arrest such person. For purposes of this section, peace officer shall include credentialed conservation officers of the Game and Parks Commission.

We have upheld investigatory stops when, based on articulable facts, the officers involved have a reasonable suspicion of criminal activity. In *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983), the appellants' vehicle was searched without a warrant after the officer had observed the suspects for some time and came to the conclusion that they were about to commit a crime. The facts upon which the police officer based his conclusion included the suspect's approaching the off-duty officer and asking him for cash in return for charging the officer's gas on his credit card; out-of-state plates on the car; the placement of the car in such a way so as to make a getaway possible; and the suspect's wandering around the gas station for some time without purchasing anything. The officer approached the suspect's car and, after observing the suspect attempting to place something under the right front seat of the car, proceeded to search the car.

In *Pierce and Wells*, we based our holding on *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), where the Supreme Court held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person

for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. Also, as we noted in *Pierce and Wells*, the *Terry* search was expanded to include automobiles in *Michigan v. Long*, 463 U.S. 1032, 1051, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983), where the Supreme Court held: "Therefore, the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." The rationale stated by the Court for the holding was that police officers are in a uniquely vulnerable position when approaching a suspect's car and must be able to protect themselves and others.

We have followed the reasoning of the High Court in our opinions involving investigatory stops. In *State v. Nowicki*, 209 Neb. 640, 645-46, 309 N.W.2d 89, 92-93 (1981), we said:

"The U.S. Supreme Court has addressed the standards that must be met in an investigatory stop to satisfy the requirements of the fourth amendment in *United States v. Cortez*, [449] U.S. [411], 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). The Court held that an investigatory stop must be justified by objective manifestation that the person stopped is, has been, or is about to be engaged in criminal activity. In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances — the whole picture — must be taken into account.

"Police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, *as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior.* See, *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed 2d 660 (1979)." (Emphasis supplied.) [Quoting *State v.*

*Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981).]

This court has held that a police officer is authorized to arrest a person without a warrant if he has reasonable cause to believe that such person has committed a crime. In *State v. Jones*, 208 Neb. 641, 645, 305 N.W.2d 355, 358 (1981), we stated: " '[T]he test of probable cause for a warrantless arrest is whether at the moment the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' " In this regard, we have also held that probable cause is to be evaluated by the collective information of the police engaged in a common investigation. *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980). See, *State v. Longa*, 211 Neb. 356, 318 N.W.2d 733 (1982); *State v. Ebberson*, 209 Neb. 41, 305 N.W.2d 904 (1981).

Applying this reasoning to the case at hand, the facts which the troopers testified as being the bases of their decision to initially enter the appellant's trailer include the facts that the appellant's vehicle was parked not a great distance from a known marijuana field, they had received a report of a rifleshot in the area earlier that morning, the troopers were unable to see into the trailer upon their approach, and once they were able to see into the trailer there was a closed door behind which a portion of the trailer was hidden. The troopers testified that the trailer was rocking violently from side to side, and no one appeared after they called for someone to come out for a period of 2 or 3 minutes. Both troopers stated that they were concerned that there may have been someone in the trailer who was injured and needed assistance and that there may have been some sort of struggle taking place when they approached the vehicle. One of the troopers stated: "When Lincoln communications advises me that there's a possibility of a suspicious vehicle and that a rifle shot was heard in that area of the suspicious vehicle, I feel that I have to exercise safety for myself."

In view of these facts and the prior decisions of the court, we feel that the totality of the circumstances shows that the officers had a reasonable belief, based on articulable facts, that a search

of the appellant's trailer was necessary in order to secure their safety and possibly the safety of another. We hold that officers may search a vehicle when faced with a situation such as the one faced by the troopers in this case, having a reasonable belief based on articulable facts that they or another may be in danger. The trial court did not abuse its discretion in denying the appellant's motion to suppress the results of the search. The appellant's assignment of error is without merit.

The appellant also argues that the State Patrol could not have searched the trailer based on the plain view exception to the warrant requirement after finding the vials which the officers thought contained a drug substance. The State Patrol troopers stated that the discovery of the vials did not figure into their decision to search the trailer, although in our view the plain view exception would have been available. See, *State v. Haselhorst*, 218 Neb. 233, 353 N.W.2d 7 (1984); *State v. Longa, supra; State v. Sotelo*, 197 Neb. 334, 248 N.W.2d 767 (1977).

AFFIRMED.