STATE OF NEBRASKA, APPELLEE, V. BRUCE R. MAHLIN, APPELLANT.
464 N.W.2d 312

Filed January 4, 1991.    No. 89-316.

David J. Warnemunde, of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

After trial to a jury, the defendant, Bruce R. Mahlin, was found guilty of possession of a controlled substance, cocaine, and of operating a motor vehicle to avoid arrest, and was sentenced to 3 years' probation. He has appealed and assigned as error that the trial court erred in (1) overruling his pretrial motion to suppress and (2) communicating orally with the jury after submission of the case.

The record shows that on March 12, 1988, five officers of the Columbus Police Department and Platte County Sheriff's

Department were on special assignment in and near the parking lot of Wishbones, a nightclub near Columbus, Nebraska. The officers were looking for minors in possession of alcohol and had had complaints about drugs' being used there.

Officers Maschmeier and Kayl observed two persons in a gold Corvette parked in the parking lot. The passenger kept bending up and down. When sitting up, he looked around, and appeared to be rolling a cigarette. The officers then saw a white cylindrical object in the passenger's hand, which object he lighted and from which he then took a drag. He then passed it to the defendant, who put it in his mouth and drove off.

When the Corvette drove away, Officers Maschmeier and Kayl followed it and radioed two other officers who were stationed in the parking lot to drive in front of the Corvette so it could not get away. Both police cars were unmarked.

The Corvette proceeded at a normal rate of speed to a stop sign at the edge of the parking lot. When the Corvette stopped at the stop sign, the police cars parked on either end of the Corvette. The officers, who were in plain clothes, left their cars and ran toward the defendant's car, displaying their badges and shouting to the driver and passenger to stop and get out of the car. The officers identified themselves as law enforcement officers.

After the defendant saw one officer's badge pressed against his car window, he maneuvered his car to leave. At that time, Officer Maschmeier smashed out the driver's window of the Corvette with his flashlight in an attempt to reach in and shut off the ignition.

The defendant proceeded west on U.S. Highway 81 for approximately one-half to three-quarters of a mile from the nightclub until he was forced to stop by a marked patrol car, which had activated its overhead lights. Officer Mayer, who was driving the marked patrol car and was involved in the special assignment, had been notified by the other officers to stop the defendant.

The defendant and the passenger got out of the Corvette, and a brief search of the car was made. The smell of burned marijuana was detected, and a marijuana "roach" was found. The defendant and the passenger were handcuffed and taken to

the Platte County Sheriff's Department, along with the Corvette. While at the sheriff's office, the defendant was searched, and a glass vial which is used to "snort" cocaine was found in his coat pocket. A rolled-up dollar bill with white crystal particles in its creases was found in his wallet. These items were placed in sealed bags and sent to the Nebraska State Patrol crime lab for analysis. The crystal particles were found to be cocaine.

Officer Maschmeier, who had received training in the identification of drugs and paraphernalia used when taking drugs, testified at the hearing on the defendant's motion to suppress. Officer Kayl testified as to his background in narcotics training and corroborated Officer Maschmeier's testimony. Based on his experience and training, Kayl thought the passenger in the Corvette was rolling a marijuana cigarette.

Brad Rutledge of the crime lab testified regarding the analyses performed on the vial and the dollar bill and stated that cocaine was found on both exhibits.

Over the defendant's objection to the offer of the vial and dollar bill on the bases of "foundation, irrelevant, immaterial, chain of custody not established," the exhibits were received.

Regarding the first assignment of error, the defendant contends the evidence of the vial and the dollar bill should have been suppressed because the stop and search of the defendant's car were illegal; however, the only objections to the evidence which were made at the trial pertained to foundation, relevance, and chain of custody. The defendant did not object on the basis of an illegal stop or search.

Error may not be predicated on a ruling which admits evidence unless a substantial right of a party is affected and a timely objection appears of record, stating the specific ground of objection, if a specific ground was not apparent from the context. Neb. Evid. R. 103(1)(a) (Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1989)); State v. Roggenkamp, 224 Neb. 914, 402 N.W.2d 682 (1987). This court has held that when a motion to suppress evidence has been overruled, the defendant must make a specific objection at the trial to the offer of the evidence which was the subject of the motion to suppress in order to preserve the issue of an illegal search and seizure for review on appeal.

See, *State v. Roggenkamp, supra*; *State v. Robinson*, 233 Neb. 729, 448 N.W.2d 386 (1989); *State v. Sock*, 227 Neb. 646, 419 N.W.2d 525 (1988).

Notwithstanding the defendant's failure to specifically object to the exhibits as the fruit of an illegal stop and search when they were offered at trial, the evidence from the suppression hearing and the trial shows that the stop was lawful. In *State v. Giessinger*, 235 Neb. 140, 145, 454 N.W.2d 289, 292-93 (1990), this court stated:

> [A]n investigative stop of a vehicle is justified where a law enforcement officer has a reasonable suspicion founded upon articulable facts which indicate that a crime has been committed or is being committed by occupants of the vehicle. . . . In determining whether facts known to a law enforcement officer at the time of the investigatory stop provided a reasonable basis for the stop, we must consider the totality of the circumstances, including all of the objective observations and considerations, as well as the suspicions, drawn by a trained and experienced law enforcement officer by inference and deduction that the individual stopped is, has been, or is about to be engaged in criminal behavior. The officer must have a particularized and objective basis for suspecting the person stopped of criminal activity. . . . A finding of a reasonable suspicion must be determined on a case-by-case basis.

(Citations omitted.)

In this case, when the officers saw that the passenger appeared to be rolling a cigarette, lighting and smoking it, and passing it to the driver, that provided a reasonable basis for believing that the crime of possession of marijuana was being committed. This provided sufficient justification for the stop of the Corvette, and the odor of burned marijuana in the car provided sufficient justification for the brief search of the automobile.

As to the defendant's second assignment of error, the only evidence submitted at the hearing on the motion for a new trial was the affidavit of his attorney, which alleged that after the case had been submitted to the jury, there were communications

in writing between the judge and jury which occurred outside the presence of counsel. The affidavit states that this information came to the attorney from court personnel who informed him that the jury had made written statements and inquiries directed to the court which were taken by the bailiff to the judge. According to the affidavit, the court's responses were delivered by the bailiff verbally to the jury, without notification of the prosecution or defense counsel. The defendant's attorney further stated that he did not know the exact nature of the jury's statements and inquiries, except that one of the statements made by the jury was that they could not reach a verdict on the flight to avoid arrest count. He did not know what the judge's response was to the alleged statements. The affidavit stated that the jury may have been told that the judge had set a deadline for deliberations.

The affidavit does not identify the persons who gave this information to the defendant's attorney. There are no affidavits or testimony by the bailiff or other court personnel to corroborate or explain the defendant's attorney's statements. The alleged written statements were not produced or offered.

The granting or refusal of a motion for a new trial is left to the discretion of the trial court, and in the absence of an abuse of that discretion, the determination will not be disturbed on appeal. *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990). Moreover, in order for a new trial to be granted, it must be shown that a substantial right of the defendant's was adversely affected and that the defendant was prejudiced thereby. *Id.*

In *State v. White*, 191 Neb. 772, 773-74, 217 N.W.2d 916, 917 (1974), this court stated:

> There is reversible error if the record affirmatively shows that defendant has been prejudiced by private communication between the trial court and jurors, and a new trial should be granted where the record is silent as to a possibility of prejudice, although reversal is not required if the record affirmatively shows communication had no tendency to influence the verdict.

In this case, the defendant presented no direct evidence that a communication in fact occurred and, apparently, made no effort to ascertain the facts by questioning court personnel or

members of the jury. The record does not show that a substantial right of the defendant's was adversely affected. Accordingly, the trial court did not abuse its discretion in refusing to grant a new trial based on the evidence presented.

The judgment is affirmed.

AFFIRMED.