STATE OF NEBRASKA, APPELLEE, V. RICHARD SCHWARTZ,
APPELLANT.

474 N.W.2d 461

Filed September 13, 1991.    No. 90-714.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Mark J. Young, Deputy Hall County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

Pursuant to verdict, defendant-appellant, Richard Schwartz, was adjudged guilty of robbery, in violation of Neb. Rev. Stat. § 28-324 (Reissue 1989), and of the use of a weapon to commit a felony, in violation of Neb. Rev. Stat. § 28-1205 (Reissue 1989), and thereafter sentenced. In summary, Schwartz assigns as error the district court's (1) overruling his pretrial motions to suppress certain evidence, (2) admitting certain evidence, and (3) overruling his motion for directed verdict made at the close of the State's case in chief. We affirm.

## II. FACTS

At approximately 10:15 p.m. on July 2, 1989, the front desk clerk of a Grand Island motel noticed a man wearing a white jogging suit running around the west wing of the motel. Shortly thereafter, upon hearing someone greet her informally, the clerk looked up from the book she was reading and saw a man standing a few feet away across the front desk counter, pointing a gun at her and demanding money. Fearing for her life, the clerk cooperated with the man's demand, giving him money from a cash register, stamp fund drawer, and safe. The man placed all the money into one of the two bags in which the money in the safe had been kept and ordered the clerk to shut herself into a back office. Apparently, he then left. The clerk hesitated for "probably a minute," after which she called the police.

The clerk described the perpetrator as being approximately 5 feet 11 inches tall and weighing 180 pounds, with short, wavy, reddish-blond hair and a red mustache, and wearing a white jogging suit. She later estimated that the perpetrator had taken between $800 and $1,000. The motel's bookkeeper testified that based upon her investigation, $879.50 was missing from the

motel following the robbery.

A witness testifying at a suppression hearing but not at the trial stated that at approximately 10:15 on the night of July 2, 1989, he was pulling into a convenience store located about two blocks north of the subject motel. As he was about to get out of his vehicle, he noticed a man, dressed in white and running very fast, round the corner of an adjacent building located between the convenience store and the motel. This man next "bail[ed] into" a "gray or charcoal gray" pickup truck backed into a space next to the aforementioned building adjacent to the convenience store. Because the witness thought it unusual, he "took a few . . . observations" and "made some . . . little mental notes" as he was entering the convenience store and the pickup truck was being driven away.

Upon leaving the convenience store, the witness saw a police cruiser go by at a rapid rate of speed. "[B]ecause of the unusual circumstances of somebody running" and jumping into a vehicle backed into a parking space, and feeling that "something had happened," the witness followed the police cruiser to the motel. He walked into the motel and, upon hearing "the gal behind the front desk" give a physical description to a police officer, asked if the man was wearing white clothing. Upon receiving an affirmative response, the witness apparently related his observations to the officer, including a description of the pickup truck, which he then characterized as a "Chevy short box pickup" having a "dark color."

At trial, Officer Alan Kosmicki of the Grand Island Police Department testified that he was the officer who responded to the call at the motel on the night of July 2, 1989. After talking with the clerk and the aforedescribed witness, Kosmicki broadcast information concerning the reported armed robbery, including the vehicular description he had been given.

At approximately 10:30 on the same night, Hall County Deputy Sheriff David Waskowiak, while on patrol, saw a dark-colored Chevrolet short box pickup truck answering the description of the vehicle suspected in the robbery of the motel. Waskowiak stopped the pickup truck, whereupon the driver, a woman, got out and approached Waskowiak's vehicle.

Waskowiak asked the driver the hair color of the other occupant in the vehicle, to which she responded brown or reddish. During this conversation, Waskowiak saw the passenger door of the pickup truck open a distance of 2 or 3 inches and noted that it remained so for 20 to 30 seconds. Waskowiak had the woman get back into the pickup truck.

By this time, other law enforcement officers had arrived at the scene. Schwartz, dressed in blue cutoff shorts, white socks, brown suede shoes, and no shirt, was identified as the passenger in the pickup truck.

Police found a pistol, identified by the clerk as the weapon used during the robbery, on the ground just outside the passenger door of the pickup truck. Sgt. Kerry Mehlin of the Grand Island Police Department, one of the officers who arrived at the scene subsequent to Waskowiak's stop of the pickup truck, identified certain money and cash register tapes with handwriting on them as items found on the seat, under the seat, and on the floor of the pickup truck. The register tapes were attached to some of the bills. The amount of money recovered totaled $838.

Police took the clerk to the scene, where she was shown a person seated with a police officer in a police vehicle. She identified Schwartz as the man who had committed the robbery.

On July 3, 1989, a Grand Island resident found a white fleece jogging suit, rolled into a ball, in her yard. The suit, when unwrapped, was found to contain a bank bag with the motel's label. The clerk identified the bag as the one the perpetrator had taken during the robbery.

The driver of the pickup truck testified as part of a plea bargain agreement with the State. She said that she had been with Schwartz on July 2, 1989, and that on that evening she and Schwartz, who was dressed in a jogging suit, were parked in the area of the convenience store near the motel. She further testified that at some point, Schwartz got out of the pickup truck and went in the direction of the motel. Upon his return, Schwartz, who was gone for "[t]en, 15 minutes at the most," instructed the woman to drive them away.

## III. ANALYSIS

### 1. NONSUPPRESSION OF EVIDENCE

The first summarized assignment of error challenges the overruling of Schwartz' motion to suppress his identification by the clerk and the overruling of his motion to suppress the "arrest and subsequent search and seizure."

### (a) Identification

We begin our analysis of the identification issue by noting that Schwartz offered no objection to the clerk's in-court identification of him as the person who committed the robbery at gunpoint. While it is true that he made a hearsay objection to the clerk's further testimony that he was the man she identified for police at the scene of the stop and arrest, he makes no present claim that such testimony was inadmissible as hearsay.

The State correctly suggests that Schwartz' failure to specifically object during trial to the identification at the scene of the stop and arrest as being the result of an unduly suggestive pretrial identification procedure should result in a waiver of this claim of error. When a motion to suppress is overruled, the defendant must make a specific objection at trial to the offer of the evidence which was the subject of the motion to suppress in order to preserve the issue for review on appeal. *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991).

Not only is the hearsay objection raised at trial not urged on appeal, no claim was made at trial that the identification testimony was the result of an unduly suggestive pretrial identification procedure. Thus, as the testimony was not specifically objected to on the same grounds as raised during the motion to suppress and again on appeal, this claim of error has been waived.

In any event, the identification procedure employed was not impermissible. Invalidation of an identification procedure is constitutionally mandated only when the procedure is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law. *State v. Sanders*, 235 Neb. 183, 455 N.W.2d 108 (1990). The U.S. Supreme Court has held that the admission of evidence from an unnecessarily suggestive pretrial

identification procedure may nonetheless be constitutional. See *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

*Manson, supra*, relied on *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), to hold that if the totality of the circumstances indicated that the suggestive identification was nonetheless reliable, due process of law did not require that the identification evidence be suppressed. The *Manson* Court held that the factors to consider when determining the reliability of the identification, as required by *Neil, supra*,

> include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson, supra* at 432 U.S. at 114. This mode of analysis has been adopted and employed by this court. See, *Sanders, supra*; *State v. Garcia*, 235 Neb. 53, 453 N.W.2d 469 (1990).

If we assume, without deciding, that the identification procedure used in this case was unduly suggestive, application of the aforementioned factors to the facts of this case demonstrates that the identification was sufficiently reliable to avoid suppression on constitutional grounds.

The very proximity of the clerk and the perpetrator during the robbery dictates that the clerk's opportunity to view the perpetrator was good. Likewise, the clerk's degree of attention was high. Schwartz has made no showing that the clerk's description of the perpetrator varied from his physical characteristics. Indeed, a comparison of her description of the perpetrator and the description of Schwartz contained in the presentence investigation report reveals a high degree of similarity between the two. The clerk's level of certainty in her identification of Schwartz was also high, there being no indication whatsoever that she ever wavered from her conclusion that he was the person who robbed the motel. Finally, the short timespan between the robbery and the identification weighs heavily in favor of an accurate

description. These indications of the clerk's ability to make an accurate description are hardly outweighed by the alleged corrupting effect of the challenged identification itself. Thus cloaked with these indicia of reliability, the identification procedure employed in this case was not constitutionally invalid.

Another consideration is the fact that Schwartz made no objection whatsoever to the clerk's in-court identification, which was wholly separate from the alleged unduly suggestive identification. Thus, even if the admission of the clerk's testimony regarding her pretrial identification of Schwartz were to have been erroneous, the error would have been harmless. *State v. Cox*, 231 Neb. 495, 504, 437 N.W.2d 134, 140 (1989) (holding that "[e]rroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact").

(b) Arrest, Search, and Seizure

In his next assignment of error, Schwartz claims that the district court erred in overruling his pretrial motion to suppress the gun, holster, money, and cash register receipts discovered as the result of his being stopped, searched, seized, and arrested, all of which he claims to have been illegal. The State contends that Schwartz waived the issues presented, as his motion to suppress this evidence was overruled prior to trial, and he failed to timely and specifically object to the reception of the complained-of evidence at the trial itself. Schwartz lodged no objection against the testimony that he was in fact arrested. Likewise, no claim was made at trial that the gun, money, and receipts were the result of an illegal search, seizure, or arrest; the trial objections to these items were based on a claimed lack of foundation and relevance. Schwartz did, however, object to testimony that the police had found an empty holster on the seat of the pickup truck, on the ground that such evidence was illegally obtained; although this objection was overruled, the State made no further effort to pursue this line of inquiry.

Since Schwartz' pretrial motion to suppress was overruled

and he failed to specifically object to the receipt of such evidence at trial on the ground that it was illegally obtained, Schwartz' claim of error has indeed been waived. See *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991).

In any event, the district court did not err in overruling Schwartz' motion to suppress. Schwartz begins his argument in support of his motion by claiming that Waskowiak had no probable cause to stop the pickup truck in which he was a passenger.

The reality is that the investigatory stop of the pickup truck is sanctioned by statute. Neb. Rev. Stat. § 29-829 (Reissue 1989) provides, in relevant part:

> A peace officer may stop any person in a public place whom he reasonably suspects of committing, who has committed, or who is about to commit a crime and may demand of him his name, address and an explanation of his actions. When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects he is in danger of life or limb, he may search such person for a dangerous weapon. If the peace officer finds such a weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.

In applying this section to investigatory stops of vehicles, this court has been mindful of U.S. Supreme Court pronouncements regarding the fourth amendment to the federal Constitution, such as those found in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). See, e.g., *State v. Gross*, 225 Neb. 798, 408 N.W.2d 297 (1987); *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983); *State v. Nowicki*, 209 Neb. 640, 309 N.W.2d 89 (1981).

From these cases emerges the rule that an investigatory stop will be upheld if justified by an objective manifestation that the person stopped is, has been, or is about to be engaged in criminal activity. See *Gross, supra*. In this case, Waskowiak testified that he stopped the pickup truck because it answered the description of a vehicle reported to have been involved in an

area robbery a mere 15 minutes earlier. Given these circumstances, there is no merit to Schwartz' argument that the investigatory stop was not justified by an objective manifestation that the persons stopped had recently been engaged in criminal activity.

Schwartz also makes much of the fact that the record does not establish whether he was arrested before, during, or after the search of the pickup truck or perhaps after the clerk's identification. The only thing that is clear from the record is that Schwartz was arrested at some time after the stop of the pickup truck.

Thus, we first examine the situation as if Schwartz had been arrested immediately upon his discovery in the pickup truck. The question, under that assumption, becomes whether there then existed probable cause to arrest him.

The test of probable cause to support a warrantless arrest is whether at the moment the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to justify a prudent person in believing the defendant had committed or was committing an offense. *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991). Schwartz claims that an arrest prior to the clerk's identification could not be sustained under this standard because the record is silent as to whether Waskowiak at that time had any knowledge of the robber's description.

While Waskowiak's testimony does not specifically indicate that he was then aware of the robber's description, several facts of record support an inference that he was so informed. The record shows that the clerk related the perpetrator's description to Kosmicki, who subsequently broadcast some information over his police radio. The record further reflects that Waskowiak had heard a radio transmission regarding the robbery. Finally, and perhaps most importantly, Waskowiak, upon first making contact with the driver of the pickup truck, asked the color of her passenger's hair. These facts, when considered in conjunction with the fact that red hair was the predominant feature of the description of the robber, support an inference that Waskowiak was aware of the robber's description as he made the investigatory stop.

Under the foregoing definition of probable cause, it must be said that where a person answering the description of a suspected robber is found in a vehicle answering the description of the vehicle suspected in the same robbery, there exists probable cause to support a warrantless arrest of the suspected robber.

When that finding is coupled with this court's holdings that prior to arrest of the occupants a vehicle may be searched pursuant to a lawful investigatory stop to the extent necessary to secure the safety of the investigating officers, see, *Gross, supra*, and *Pierce and Wells, supra*, the actual time of arrest becomes less important. A prearrest search of the pickup truck was warranted under *Gross, supra*, and *Pierce and Wells, supra*, because the officers were dealing with an investigatory stop of a vehicle suspected to have been used in an armed robbery.

Logic dictates that as the arrest was not made until after the legal search pursuant to an investigatory stop, and as sufficient probable cause existed prior to the search to sustain a warrantless arrest, any such arrest subsequent to the search or identification is also supported by probable cause. Thus, regardless of when the arrest was actually made, it was supported by probable cause. Likewise, irrespective of whether the search and seizure were made prior to or subsequent to the arrest, they too were proper.

## 2. RECEIPT OF EVIDENCE

In the next summarized claim of error, Schwartz complains of the reception into evidence of the cash register tapes and money found in the pickup truck in which he was arrested. Specifically, he cites as error the reception of the clerk's testimony identifying handwritten initials on the register tapes and the acceptance into evidence of money not identified by the clerk or by serial numbers, or corresponding exactly with the amount of money the bookkeeper stated had been taken from the motel.

In support of these claims, Schwartz cites only to *State v. Thomas*, 232 Neb. 490, 441 N.W.2d 186 (1989), and *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989), for the

proposition that the admission of evidence is left to the discretion of the trial court, and to *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988), and *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988), for the proposition that an erroneous evidentiary ruling results in prejudice to the defendant unless the State demonstrates the error is harmless beyond a reasonable doubt. We point out once again that although this court has in the past declared the first of the two cited propositions, the statement is overbroad. In proceedings where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

Having said that, we move on to Schwartz' reliance on the fact that the clerk was not qualified as a handwriting expert. Neb. Rev. Stat. § 27-901 (Reissue 1989) makes clear that one need not be a handwriting expert in order to authenticate a writing:

> (1) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

> (2) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

> . . . .

> (b) *Nonexpert opinion* as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

(Emphasis supplied.)

The clerk testified that during the course of her employment at the motel, which began in February 1989, she had occasion to see the handwritten initials of other front desk employees. Upon examination of the register tapes, the clerk identified the initials of three separate individuals, as well as her own. Thus, because the clerk demonstrated a familiarity with handwriting not acquired for purposes of the case, the strictures of § 27-901

were complied with.

Schwartz has made no showing of noncompliance with § 27-901 in his further complaints about the register tapes, wherein he claims that the handwriting consisted only of initials, that the reported authors of the initials were not called to testify, and that the cash amounts reflected on the tapes were not shown to match the amount taken in the robbery. Those complaints, at most, go to the weight to be accorded the clerk's handwriting testimony, not to the admissibility of the testimony.

Schwartz also urges that it was error to receive into evidence $838 in cash, to which were attached the aforementioned register tapes, all found in the pickup truck in which Schwartz was arrested. He claims that because the clerk did not identify the money as that taken in the robbery, there were no distinguishing marks on the money or serial numbers recorded, and the amount of money found in the pickup truck did not match exactly that amount reported as stolen by the bookkeeper, more foundational evidence was required.

Neb. Rev. Stat. § 27-402 (Reissue 1989) provides:

> All relevant evidence is admissible except as otherwise provided by the Constitution of the United States or the State of Nebraska, by Act of Congress or of the Legislature of the State of Nebraska, by these rules, or by other rules adopted by the Supreme Court of Nebraska which are not in conflict with laws governing such matters. Evidence which is not relevant is not admissible.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 1989).

As already mentioned, the testimony revealed that the money in question was similar in amount to that stolen from the motel. This money was attached to register tapes identified by the clerk as being of a type taken with the money from the motel. The money and tapes were found shortly after the robbery in a vehicle matching the description of the vehicle suspected to have been used in connection with the robbery,

which vehicle was occupied by Schwartz, a man meeting the robber's description. Sufficient foundation had been laid to render the money relevant to the issue of Schwartz' guilt.

The clerk's failure to testify that the money was the same money as that taken from the motel, the lack of serial number identification, and the slight discrepancy between the amount of money recovered and that reported by the bookkeeper to have been stolen are, again, matters affecting the weight to be accorded the evidence, not its admissibility.

### 3. NONDIRECTION OF VERDICT

Finally, in the third and last summarized assignment of error, Schwartz claims that the district court erred in overruling his motion for directed verdict following the State's rest. However, upon the overruling of his motion for directed verdict, Schwartz presented evidence in his defense.

Because it is the rule in Nebraska that a defendant who moves for a directed verdict at the close of the State's evidence and who, upon the overruling of such motion, proceeds with trial and introduces evidence waives any error in the ruling on the motion for a directed verdict, *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991), Schwartz waived any error in this regard.

Once again, however, a directed verdict of acquittal would have been improper. A directed verdict in a criminal case is appropriate only when there is a complete failure of evidence to establish an essential element of the crime charged or when the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Bright*, 238 Neb. 348, 470 N.W.2d 181 (1991); *State v. Thomas, supra*. In this court's consideration of a defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence. *Id*. As the analyses of Schwartz' other claims of error demonstrate, the State proved a prima facie case, and there was thus no basis upon which the trial court could have properly directed a verdict of acquittal.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, J., concurs.